UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MOUNTAIN STATES PIPE & SUPPLY COMPANY         CIVIL ACTION

VERSUS                                        NO. 12-2146

THE CITY OF NEW ROADS, LOUISIANA
AND TRITON WATER TECHNOLOGIES, INC.           SECTION "N" (4)

## ORDER AND REASONS

Presently before the Court is the "Motion to Dismiss Certain Claims Against Triton Water Technologies, Inc. Pursuant to Rule 12(b)(6)" (Rec. Doc. 5). For the reasons stated herein, **IT IS ORDERED** that the motion is **GRANTED**.

## BACKGROUND

According to the complaint filed by Plaintiff, Mountain States Pipe & Supply Company, the City of New Roads (the "City") issued a purchase order to Plaintiff, on December 21, 2009, for a project whereby Plaintiff was to provide replacement gas, water and electrical meters for the City (hereinafter referred to as the "Project"). In connection with the Project, Plaintiff also was to provide an automatic metering infrastructure and related items.

The City and Plaintiff entered into an agreement (the "Agreement") setting forth the terms governing the Project. Pursuant to the Agreement, the City was responsible for the installation of all the equipment and materials provided by Plaintiff, with the exception of servers and software. The Agreement further stated that Defendant Triton Water Technologies, Inc. ("Triton") "will be acting as the prime contractor for this project for the City of New Roads, Louisiana," and that "[a]s

the prime contractor, Triton will be acting as the City's designated agent for this project." Subsequent to the delivery and installation of the items requisitioned in the purchase order, however, "problems arose with the programming of the meter transmission of data."[1]

Plaintiff alleges, on information and belief, that these problems were the result of improper installation of the equipment and materials by the City and, more specifically, its prime contractor, Triton. Plaintiff additionally contends that Triton maliciously and wantonly interfered with Plaintiff's business relations with the City by advising the City that it should not pay Plaintiff for the materials and equipment supplied under the Agreement. According to Plaintiff, Triton so advised the City in an attempt to gain an advantage over Plaintiff whereby Plaintiff would be viewed as responsible for Triton's own failings in the installation of the meters.

## LAW AND ANALYSIS

Rule 8 of the Federal Rules of Civil Procedure requires that complaints provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). Although a complaint does not need "detailed factual allegations, . . . more than labels and conclusions are necessary, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations and quotations omitted); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Similarly, in evaluating motions to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Iqbal,* 556 U.S. at 678 ("tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

---

[1] See Complaint (Rec. Doc. 1), ¶ 9.

conclusions."). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557); *see also Christopher v. Harbury*, 536 U.S. 403, 416 (2002) (elements of a plaintiff's claim(s) "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant").

Further, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Factual allegations that are "merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief," and thus are inadequate. *Id.* (internal quotations omitted). Rather, a complaint's allegations "must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).

"Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (internal citations omitted). *See also Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (degree of required specificity depends on context, *i.e.*, the type of claim at issue). And, in evaluating motions to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." *Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir.), *cert. denied,* 476 U.S. 1159 (1986). Further, "[a]ll questions of fact and any ambiguities in the controlling

substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne,* 252 F.3d 352, 357 (5th Cir. 2001). Nevertheless, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – "that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 678 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

In its motion, Triton contends that Plaintiff's allegations fail to state a viable claim, under Louisiana law, for tortious interference with business relations. As explained by Chief Judge Vance in *Marshall Investments Corporation v. R.P. Carbone Company*, No. 05-6486, 2006 WL 2644959, *5 (E.D. La.):

> Louisiana courts have recognized a cause of action for tortious interference with business relations. *Junior Money Bags, Ltd. v. Segal,* 970 F.2d 1, 10 (5th Cir. 1992) (citations omitted); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir.1981). The cause of action for tortious interference with business derives from article 2315 of the Louisiana Civil Code. [La. Civ. Code] art. 2315(a) ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."); *Dussuoy*, 660 F.2d at 601. Tortious interference is based on the principle that the right to influence others not to deal is not absolute. *Junior Money Bags*, 970 F.2d at 10 (citing *Ustica Enters., Inc. v. Costello,* 434 So.2d 137, 140 (La. Ct. App. 1983). Louisiana law protects the businessman from 'malicious and wanton interference,' though it permits interferences designed to protect legitimate interests of the actor. *Dussouy,* 660 F.2d at 601. A plaintiff bringing a claim for tortious interference with business must ultimately show "by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff." *Junior Money Bags*, 970 F.2d at 10 (quoting *McCoin v. McGehee,* 498 So. 2d 272, 274 (La. Ct. App.1986). It is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party. *See Nowling v. Aero Servs. Int'l Inc.,* 752 F. Supp. 1302, 1312 n. 7 (E.D. La. 1990); *Ustica,* 434 So. 2d at 140.
>
> Louisiana jurisprudence, however, has viewed this cause of action with disfavor. *JCD Mktg. Co. v. Bass Hotels and Resorts, Inc.*, 812 So.2d 834,841 (La. Ct. App. 2002). "Louisiana courts have

> limited this cause of action by imposing a malice element, which requires that the plaintiff show the defendant acted with actual malice." *Id.*; *Dussouy*, 660 F.2d at 602. "Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings. In fact, there appear to be no reported cases in which anyone actually has been held liable for the tort." George Denegre, Jr., et al., *Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference*, 45 Loy. L. Rev. 395, 401 (1999); see also *Junior Money Bags*, 970 F.2d at 11 (noting that tortious interference with business is a "very limited form of recovery" in Louisiana). In order to sustain a claim for tortious interference with business relations, actual malice must be pleaded in the complaint. *Dussouy*, 660 F.2d at 602.

Applying these principles here, and considering the limited and disfavored nature of this cause of action, the Court finds that Plaintiff has failed to state a viable claim against Triton for tortious interference with business relations. As an initial matter, Triton's actions, as alleged, did not cause the City "not to deal" with Plaintiff. Rather, as Triton emphasizes, at the time of the conduct in question, the City already had entered into a contract with Plaintiff, *i.e.,* the Agreement. In addition, Plaintiff's factual allegations do not support an inference that Triton's actions, in this commercial context, were motivated by the requisite "spite or ill will," that is, "actual malice," rather than profit. *Cf. WebApps, LLC v. Accelerize New Media,* 847 F. Supp. 2d 912, 920 (E.D. La. 2012)(Engelhardt, J.)(alleged "bad faith" does not necessarily always include "malice" or "ill will").

The parties' submissions additionally reflect a disagreement relative to whether Plaintiff's complaint purports to allege a claim, under Louisiana law, for tortious interference with contract and, in any event, whether, as pled, Plaintiff's allegations are legally sufficient. In *Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P,* 689 F.3d 380, 394-96 (5th Cir. 2012), the Fifth Circuit outlined the tort's genesis and evolution under Louisiana law:

5

In 1989, the Louisiana Supreme Court first recognized the cause of action for intentional interference with a contract in *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 232–34 (La.1989). However, the cause of action that the state's highest court recognized was extremely limited. The court expressly refused to adopt the broad common law doctrine of interference with a contract, because it is "a rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way." *Id*. at 234 (quoting W. Prosser & P. Keeton, The Law of Torts § 129, p. 979 (5th ed. 1984)) (internal quotation marks omitted). The court recognized "only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." *Id.* The court laid out the elements of this cause of action:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; and (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*Id.* The Louisiana Supreme Court has not addressed the scope of this cause of action since its decision in *9 to 5*.

We have acknowledged the limited nature of Louisiana's claim for tortious interference with a contract. In *American Waste & Pollution Control Co. v. Browning-Ferris, Inc*., 949 F.2d 1384 (5th Cir. 1991), we noted that the *9 to 5* court created a narrow cause of action, but "did not expressly preclude a cause of action . . . based on other facts." *Id*. at 1387–88. We noted that the "common thread in [*9 to 5*] and its progeny is the requisite duty, or obligation, for such a cause of action." *Id*. at 1390. "[W]hether a duty exists is a question of law," and in *9 to 5*, the requisite duty "arose out of a corporate officer's narrowly defined duty to those with whom his corporation contracts." *Id.* (emphasis added). In *American Waste*, the plaintiff alleged that the defendant had knowledge of the plaintiff's contract with another party, and the defendant improperly induced the party to repudiate its contract with the plaintiff. *Id.* at 1385. However, we

6

> concluded that because the defendant "had no relationship" with the plaintiff, the requisite duty was lacking. *Id*. at 1390. Given the absence of such a duty, we made the *Erie*-guess that the Louisiana Supreme Court would dismiss the plaintiff's intentional interference with a contract claim. *Id.* at 1390-91.
>
> \* \* \*
>
> The Louisiana courts of appeal have conformed to the limited cause of action expressed in *9 to 5*. *See, e.g., Brown v. Romero*, 922 So.2d 742, 747 (La. Ct. App. 2006); *Tallo v. Stroh Brewery Co.*, 544 So.2d 452, 453–55 (La. Ct. App.1989). In *Technical Control Systems, Inc. v. Green*, 809 So.2d 1204 (La. Ct. App. 2002), the plaintiff urged the state appellate court to expand the holding of *9 to 5* "to allow a cause of action against a corporate entity defendant." *Id.* at 1207. The court concluded that, because "recent attempts by this court to expand upon this [cause of action] have been reversed by our supreme court," the court "must assume that [its] expansive take on a tortious interference with contract claim did not meet the approval of the supreme court." *Id.* at 1208–09 (citing *Cowen v. Steiner*, 689 So. 2d 516 (La. Ct. App. 1997), *rev'd* 701 So.2d 140 (La.1997)). Thus, the state appellate court affirmed the dismissal of the claim. *Id*. at 1209.
>
> Where the Louisiana appellate courts have found a viable cause of action for tortious interference with a contract, the courts have identified a narrow, individualized duty between the plaintiff and the alleged tortfeasor. *See Neel v. Citrus Lands of La., Inc.*, 629 So.2d 1299, 1301 (La. Ct. App. 1993) (stating that, "[i]f Mr. Neel can establish that Citrus Lands had a duty to allow him to go on the land leased to EuroAmerican," then he could bring a viable tortious interference with a contract claim); *see also MD Care, Inc. v. Angelo*, 672 So.2d 969, 973 (La. Ct. App. 1996) ("[T]he determinative factor . . . was whether the defendant owed the plaintiff a duty, the breach of which might constitute intentional interference with a contract.").

Here, Plaintiff's argument that Triton – the City's prime contractor and agent for the Project – should not be treated differently from the corporate officer in *9 to 5*, for purposes of a tortious interference with contract clam, is not without some appeal. Nevertheless, as discussed in *Petrohawk,* both Louisiana state and federal courts have taken a circumscribed approach since *9 to 5* regarding the

7

cause of action. *See, e.g., Spears v. American Legion Hosp.,* 780 So. 2d 493, 496-98 (La. Ct. App. 3 Cir. 2001)(no tortious interference with contract claim against ad hoc committee of the membership of hospital; despite influence over board of directors, committee was not a corporate officer and did not function as one); *see also M&D Mineral Consultants LLC v. Wenti Li, et al.,* No. 12-2082, 2013 WL 883689 (W.D. La.)(no tortious interference with contract claim could be asserted against manager of limited liability company); *Harris Builders, L.L.C. v. URS Corp.*, 861 F. Supp. 2d 746, 750-52 (E.D. La. 2012)(general contractor on public contract could not assert tortious interference with contract claim against project's construction manager); *City of Alexandria v. Cleco Corp.*, 735 F. Supp. 2d 448, 463 (W.D. La. 2010)(cause of action not applicable to mayor and city attorney of a municipality); *Hibernia Community Development Corporation, Inc., v. U.S.E. Community Services Group, Inc.,* 166 F. Supp .2d 511, 514 (E.D. La. 2001) (no cause of action against office manager who was not a corporate officer). Thus, this Court, charged with performing an *Erie*-guess,[2] is not persuaded that such a claim exists here, under Louisiana law, relative to Triton.

---

[2] As discussed in *American Waste & Pollution Control Company v. Browning-Ferris, Inc.,* 949 F.2d 1384, 1386 (5th Cir. 1991):

> "When presented with an unsettled point of state law, [a federal court's] role under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is to determine how the [Louisiana] Supreme Court would resolve the issue if presented to it." *Coatings Mfrs., Inc. v. DPI, Inc*., 926 F.2d 474, 479 (5th Cir. 1991). In addition, "[w]hen making an *Erie*-guess in the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it." *United Parcel Serv., Inc. v. Weben Indus., Inc.,* 794 F.2d 1005, 1008 (5th Cir.1986) (citing *Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394, 396-98 (5th Cir.1986) (en banc)). "[W]e are not free to fashion new theories of recovery under Louisiana law." *Pittman v. Dow Jones & Co.*, 834 F.2d 1171, 1171 (5th Cir.1987).

## **CONCLUSION**

As explained herein, the Court finds that Plaintiff's complaint fails to state a claim, under Louisiana law, for tortious interference with business relations or tortious interference with contract. Accordingly, Triton's "Motion to Dismiss Certain Claims" is **GRANTED**.

New Orleans, Louisiana, this 21st day of June 2013.

_____
**KURT D. ENGELHARDT**
**United States District Judge**